## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

GRAY DATA INC., f/k/a GRAY MATTER GROUP, INC., a Wyoming Corporation and GRAY MATTER HOLDINGS, INC., a Wyoming Corporation,

Plaintiffs,

v.

ANTHONY DAVIAN and MATTHEW KLUGER,

Defendants.

Civil Action No.

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT FOR TRADEMARK INFRINGEMENT, CYBERSQUATTING, AND COMMON LAW TRADEMARK INFRINGMENT

Plaintiffs Gray Matter Holdings, Inc. ("Gray Matter Holdings") and its subsidiary Gray Data Inc. f/k/a Gray Matter Group, Inc. ("Gray Data") (collectively, "Plaintiffs"), for their causes of action against Defendants Anthony Davian ("Davian") and Matthew Kluger ("Kluger") (collectively, "Defendants") allege as follows:

### JURISDICTION AND VENUE

1.      This is an action for trademark infringement in violation of §43 of the Lanham Act (15 U.S.C. §1125) and cybersquatting in violation of §43(d) of the Lanham Act (15 U.S.C. §1125(d)).  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1267.

2.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1367 because it involves substantial federal claims arising under the Lanham Act (15 U.S.C. §1051 et seq.) and related claims under state law.  Defendants' acts of infringement of Plaintiffs' mark were and are being committed in interstate commerce, including but not limited to via a website under Defendants' control found at gograymatter.com.

3.     This Court has personal jurisdiction over Defendants because Defendants either reside in Ohio or have engaged in substantial and continuing contacts with Ohio. Defendants have transacted business in Ohio and they have intentionally directed their tortious activity at Plaintiffs while knowing Plaintiffs operate in Ohio.  See Ohio Rev. Code § 2307.382(A)(1), (4), and (6).

4.     Furthermore, upon information and belief, Defendants' acts of infringement have been committed within Ohio.  Upon information and belief, Defendants have marketed and advertised services under the infringing mark GRAY MATTER (the "Infringing Mark") and through a website found at gograymatter.com (the "Infringing Domain") in Ohio and have offered to sell services within Ohio under the Infringing Mark and Infringing Domain. See Ohio Rev. Code Ann. § 2307.382(A)(1), (3).

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and because Defendants are subject to the Court's personal jurisdiction.

**PARTIES**

6.      Plaintiff Gray Matter Holdings, Inc. is a corporation organized and existing under the laws of the State of Wyoming, having an office and place of business at 9733 York Beta, North Royalton, Ohio 44133.

7.      Plaintiff Gray Data, Inc., f/k/a Gray Matter Group, Inc. is a corporation organized and existing under the laws of the State of Wyoming, having an office and place of business at 9733 York Beta, North Royalton, Ohio 44133.

8.      Defendant Anthony Davian is a terminated employee of Gray Matter Holdings and Gray Data.  Upon information and belief, Davian resides in North Royalton, Ohio.

9.      Defendant Matthew Kluger is a former independent contractor of Gray Matter Holdings.  Upon information and belief, Kluger resides in Lansing, New York.

10.      Upon information and belief, Davian and Kluger have collaborated on, jointly planned, control, provided material support to, approved, and/or endorsed the actions of each other, such that they are both active participants in the tortious activity set forth in this Complaint and both benefit directly from said activity.

**FACTUAL BACKGROUND**

***Defendants' Former Relationship with Gray Matter Holdings and Gray Data***

11.      Gray Matter Holdings and its subsidiary Gray Data (the "Corporation") engage in the business of cryptocurrency data mining.  The Corporation uses high performance compute ("HPC") hardware to facilitate blockchain auditing/verification and digital asset generation.  The digital assets are generated via a process that verifies transactions on a block chain, colloquialized as "cryptocurrency mining."  The Corporation's services require capital inputs for computer hardware and operational electricity.  For these inputs, and the

verification service provided, the Corporation receives a portion of the generated digital assets, colloquialized as a "reward."  These rewards are booked as the Corporation's inventory and then traded or sold for goods and services.

12.     David Handel ("Handel") is the President and Chief Executive Officer of the Corporation.  Marc Behar ("Behar") is the Chief Operating Officer of the Corporation.

13.     Davian is a former employee of the Corporation, who was terminated on February 6, 2023.  At various times, Davian has also held himself out as an officer, director, shareholder, trustee of one or more shareholder trusts in Gray Matter Holdings, and/or the custodian of his minor childrens' shares in Gray Matter Holdings.

14.     Kluger is a former independent contractor with Gray Matter Holdings.

15.     Gray Matter Holdings was incorporated on February 28, 2018.

16.     Gray Matter Holdings owns and controls the GRAY MATTER mark.

17.     Gray Data is a subsidiary of Gray Matter Holdings.  Gray Data is the Corporation's cryptocurrency mining operation.  Gray Data licenses and uses the GRAY MATTER mark, and all goodwill inures to the benefit of Gray Matter Holdings, the ultimate parent company within the Corporation.

### Plaintiffs' GRAY MATTER Mark

18.     Shortly before Gray Matter Holdings' incorporation and as part of preliminary formation activities, the graymattergr.com domain was created on January 18, 2018. (Exhibit 1, ICANN search.)

19.     In registering the domain name for the benefit of what became Gray Matter Holdings following its incorporation, Davian listed himself as the contact and owner for the domain name.  Davian paid for the domain using a PayPal account.  (Exhibit 2, IONOS

receipt from Oct. 31, 2018; Exhibit 3, IONOS invoice from Jan. 24, 2023 and receipt from Apr. 24, 2022; Exhibit 4 IONOS Expense Transactions.)  The PayPal account charges for the domain were, in turn, paid by the Corporation, as reflected on statements from the Corporation's Huntington Bank Account.  (Exhibit 3; Exhibit 5 Huntington Bank Statements.)

20.      Prior to this dispute, Davian has never claimed to Plaintiffs that he personally owns the graymattergr.com domain and to the best of Plaintiffs' knowledge he only publicly used the domain or GRAY MATTER mark in his performance of duties to and on behalf of Plaintiffs.

21.      Since the creation of the graymattergr.com domain, Gray Matter Holdings and its subsidiary-licensees have used this domain for corporate email accounts and communications with potential consumers and the public.

22.      Beginning in August 2020, Gray Matter Holdings and its subsidiary-licensees began using the graymattergr.com domain as a public facing website.  (Exhibit 6, Aug. 12, 2020 WayBack Machine.)  At that time, the domain also linked to the Gray Matter Twitter account, http://www.twitter.com/graymattergr.



23.   In much the same way as Gray Matter Holdings is a holding company for several subsidiary corporations, the graymattergr.com domain has been used since 2020 to market and facilitate the efforts of Gray Matter Holdings subsidiaries.

24.   In August 2020, the graymattergr.com domain inked to a subsidiary domain, graydata.io (also owned by Gray Matter Holdings).  This domain discussed Gray Matter Holdings' and Gray Data's cryptocurrency mining efforts.  (Exhibit 7, Gray Data website.)



25.     Plaintiffs also operate an Instagram account, @graydatamining, and a Twitter account, @graydatamining.




26.     Plaintiffs' GRAY MATTER mark has appeared in Plaintiffs' advertisements and throughout its website, at trade shows, and in a wide range of promotional materials, including on clothing used by employees to denote representatives of the company and promote the brand at trade shows and conferences.

27.     Plaintiffs have spent hundreds of thousands of dollars from the time they began use of the GRAY MATTER mark to advertise and promote the GRAY MATTER mark for the services it covers.  As a result of Plaintiffs' marketing efforts and extensive, exclusive use of the GRAY MATTER mark in connection with cryptocurrency mining operations, the GRAY MATTER mark is recognized by the general public as well as by those in the trade.  The public and those in the trade understand the GRAY MATTER mark as identifying Plaintiffs' services and associates the mark exclusively with Plaintiffs.

### *Defendants' Infringement and Cybersquatting*

28.     Litigation between Handel and Davian is currently pending in the Cuyahoga County Court of Common Pleas, and is related to Davian's misuse of corporate funds and other acts of self-dealing during his employment with the Corporation.  *See Handel, et al. v. Davian, et al.*, No. CV 23 974930 (Cuyahoga Cnty. C.P.) (the "Cuyahoga County Action").

29.     The court in the Cuyahoga County Action granted the plaintiffs' motion for a temporary restraining order ("TRO") on February 8, 2023.  Among other things, the court ordered Davian to: 1) "not access any corporate accounts" of Gray Matter Holdings or Gray Data; 2) "provide [] Handel [with] access" to the Corporation's accounts "including, but not limited to, providing the online login and password information for the same"; and 3) "restore [employees'] security credentials and server access."  (TRO Order at 2.)

30.     Pursuant to the TRO, Davian purportedly provided to Plaintiffs the security credentials to access all of Plaintiffs' corporate accounts, including the Corporation's domain, graymattergr.com.  However, Davian denied having access to the 16-digit recovery phrase associated with the domain account and thus failed to provide this recovery phrase to Plaintiffs.

Davian has since represented that he lost the "recovery code" for the domain account and could not find the "recovery code" while the Cuyahoga County court's TRO was in place.

31.     On June 6, 2023, the Cuyahoga County court denied plaintiffs' motion for preliminary injunction and consequently lifted the TRO that was previously over Davian.

32.     Surprisingly, after the Cuyahoga County court lifted the TRO against Davian, Davian somehow "recovered" the 16-digit recovery phrase for the domain account.

33.     Upon information and belief, after Davian rediscovered the recovery phrase on or around July 19, 2023, Davian subsequently used the graymattergr.com domain's two-factor authentication to access the account and change the log in information to prevent access by Plaintiffs' employees and customers to the Corporation's external website.

34.     On July 19, 2023 at 19:27:38 UTC, Plaintiffs' domain, graymattergr.com, was surreptitiously updated to begin redirecting website visitors to a new domain, gograymatter.com (the "Infringing Domain").

35.     Plaintiffs' investigation shows that the Infringing Domain was created on March 5, 2023, shortly after Davian was terminated by Plaintiffs (*see* Exhibit 8, ICANN Lookup for gograymatter.com), and just one day before Davian incorporated a new entity in Wyoming named "Gray Matter Advisors, Inc."  (*See* Exhibit 9, Articles of Incorporation, dated March 6, 2023.)  The Infringing Domain was also registered in a manner concealing the owner's identity—it was registered using Domains By Proxy, LLC, a privacy service that allows GoDaddy customers who do not want their contact information shown on a public record to use Domains By Proxy as the registrant name.  (*See* Exhibit 8.)  The Infringing Domain was also updated on June 7, 2023 —the day after the TRO was lifted in the Cuyahoga County Action.

36.     On July 19—at or near the same time graymattergr.com was surreptitiously updated to begin redirecting traffic to the Infringing Domain—Plaintiffs' email accounts, which were hosted by the same graymattergr.com domain, were hijacked.  As a result, Plaintiffs lost access to their email accounts.

37.     This loss of the Corporation's email accounts is due to the loss of control of the graymattergr.com domain.

38.     A domain owner advertises its IP addresses to the world in a public zone file maintained by the owner of the domain name.  The zone file is a public company directory, represented as a table of records and associated addresses, much like a table of departments and associated floor numbers found in the lobby of a company's building.  The person with access to the graymatter.com domain provider controls these records and addresses.  So, if an infiltrator modifies the records, they can hijack a company's email by rerouting incoming emails to their own server.  If they delete the records, all inbound email will cease to be delivered as intended.

39.     As alleged above, since Davian is the only person with access to the graymattergr.com domain recovery codes, he is the only person who could have redirected graymattergr.com to the Infringing Domain.

40.     And, upon information and belief, Davian is the person who hijacked and disabled Plaintiffs' email accounts.  Upon information and belief, Davian confirmed to a third party that he is the person who hijacked Plaintiffs' domain and disabled email access.

41.     Active disabling of Plaintiffs' email accounts is, in fact, easily proven by former and current Domain Name System ("DNS") records, which are a matter of public record.  The former DNS records pointed to Plaintiffs' Google Workspace organization. Upon the graymattergr.com domain account being hijacked, the hijacker—which is Davian upon information and belief—

deleted the Corporation's email server records, thus preventing all inbound email to be delivered as intended.

42.     On or about July 27, 2023 (the filing date of this Verified Complaint), Defendants redirected email to Defendants' own email servers, giving Defendants access to Plaintiffs' sensitive and confidential business information contained in those emails.

43.     On July 20, 2023, the day after the domain and email hijacking, Plaintiffs spoke with the graymattergr.com domain server, IONOS, and attempted to regain control of the domain account so they could access email and website functionality.  IONOS refused to provide Plaintiffs with access to the domain account because the account was still registered in Davian's name. IONOS did, however, decouple the graymattergr.com domain from the Infringing Domain.  As of the filing date of this complaint, Plaintiffs still do not have access to their domain or associated email accounts.

***Similarities Between Plaintiffs' Mark and Defendants' Infringing Domain and Website***

44.     The Infringing Domain (gograymatter.com) contains content that is substantially similar to what was previously posted to Plaintiffs' website found at graymattergr.com before it was commandeered by Defendants, including use of the GRAY MATTER mark.

45.     Like the website found at graymattergr.com, the website found at gograymatter.com (the "Infringing Website") purports to be a website for "Gray Matter."

46.     The stylized version of the Infringing Mark on the Infringing Website is substantially similar to the stylized versions of Plaintiffs' mark.  All three versions use a san serif font, with substantially similar kernelling between the letters and are accompanied by a similarly-sized abstract design.

47.     Gray Matter Holdings' logo and the Infringing Website's logo place this abstract design proximately to the left of the GRAYMATTER word mark.

48.     Both Defendant and Gray Data use a cube design.

**Gray Matter Holdings' Design Mark:**                              **Defendants' Design Mark:**

                                                 

**Gray Data's Design:**



49.     On July 20, 2023, the Infringing Website used the same color scheme as Plaintiffs' websites, including purple, blue, and teal on a dark background such that an ordinary web user might think it was just an updated view.

**Gray Matter Holdings' Website:**

**Gray Data's Landing Page:**





**Defendants' Infringing Website on July 20, 2020:**



***Plaintiffs Issue Cease and Desist Notice to Davian's Counsel***

50.     On July 23, 2023, Plaintiffs' contacted Davian through counsel and demanded that Davian take down the Infringing Website and cease and desist his use of the GRAY MATTER mark immediately. (Exhibit 10, Email with Counsel)

51.     Following Plaintiffs' cease and desist efforts directed to the Infringing Domain and Infringing Website, Defendants never denied that they own and are responsible for the Infringing Domain and Infringing Website.

52.     Defendants have not complied with Plaintiffs' cease and desist demands.

53.     Instead, the Infringing Website was updated on July 24, 2023, altering the color scheme slightly.



54.     As the image above shows, Defendants' Infringing Website shows that Defendants are focused on similar services and the same field—cryptocurrency mining.

55.     The Infringing Website also contains false and misleading portrayals of Defendants' "Team."  The Infringing Website lists "Anthony" and "Matt" as members of the "Team."  The biographies make clear that these individuals are Defendants Davian and Kluger.  However, the individuals in the photos associated with their biographies on the Infringing Website were not Davian and Kluger.  While an actual photo replaced the false picture of Davian on our around July 27, the photo of Kluger on the Infringing Website remains false.  This is being done to obfuscate that Defendants are behind the Infringing Website.

**Infringing Website:**

**"Matt"**



**Actual Photo:**

**Matthew Kluger[1]**



Matthew Kluger, a former Big Law associate, arrives at federal court in Newark, New Jersey, on June 4, 2012. (Photo: Emile Wamsteker/Bloomberg)

---

[1] Image of Matthew Kluger available here: https://www.law.com/2018/09/04/ex-big-law-associate-loses-challenge-to-12-year-insider-trading-sentence/.

**"Anthony"**                                              **Anthony Davian[2]**




56.     The use of "Gray Matter" by Plaintiffs' terminated former executives falsely and

detrimentally associates Defendants with Plaintiff.

57.     Taken collectively, the similarities between the Infringing Website (and current

executives) and Plaintiffs' websites (and former executives) as well as the similar services offered

by the parties create the unmistakable and false impression that the Infringing Website and

Defendants are an updated version or offshoot of Plaintiffs' websites and business operations, or

otherwise are associated with and/or endorsed by Plaintiffs.

58.     Defendants are well aware of Plaintiffs' existence and have actual notice of

Plaintiffs' rights in and to the GRAY MATTER mark.

59.     Despite Defendants' actual and constructive notice of Plaintiffs' rights in the GRAY

MATTER mark and Defendants' knowledge that their use of the GRAY MATTER mark is neither

---

[2] Image of Anthony Davian available here: https://www.anthonydavian.com/about (last visited
7/26/2023).

consented to, nor authorized by Plaintiffs, Defendants continue to use the Infringing Mark in interstate commerce.

60.     Defendants' aforesaid unauthorized use of the Infringing Mark is willful and deliberate and done with an intent to trade upon the goodwill represented by the GRAY MATTER mark, to dilute the distinctiveness of the GRAY MATTER mark, and to mislead and confuse actual and potential consumers.

61.     Defendants' unauthorized use of the Infringing Mark is likely to cause confusion in the mind of ordinary consumers with respect to Defendants' affiliation or association with Plaintiffs' cryptocurrency mining business, the source of Defendants' services, and/or Plaintiffs' sponsorship of Defendants and their services.

62.     Upon information and belief, Defendants are acting willfully and knowingly, choosing to use the Infringing Mark, Infringing Domain and Infringing Website with full knowledge of Plaintiffs' rights in and to the GRAY MATTER mark, in order to deceive and confuse consumers.

63.     This is consistent with Davian's actions since his termination.  Upon information and belief, despite a TRO in the Cuyahoga County Action, Davian contacted Aspen Energy Corp., an energy procurement and management services company, and attempted to obtain confidential information about Plaintiffs' actions.  Aspen refused to provide Davian with any information because the company knew Davian had been terminated from the Corporation.

### *Defendants Attend the "Mining Disrupt" Conference in Miami*

64.     On July 24, 2023, Davian traveled to Miami, Florida.  Campbell, Behar, and Davian were on the same flight to Miami.

65.    Davian and Kluger were in Miami to attend and or network with industry personnel at Mining Disrupt ("Mining Disrupt"), the largest bitcoin mining expo and biggest mining container showcase that Plaintiffs regularly attend.  At the expo, Defendants were even seen wearing Plaintiffs' Gray Data-company shirts in an attempt to reinforce the confusion created by Defendants' infringement and to mislead customers, vendors, and suppliers.  (*See* Exhibit 11, Davian and Kluger Image.)



66.    While at Mining Disrupt, upon information and belief, Davian is promoting Defendants' new business using the GRAY MATTER mark, the Infringing Domain and the Infringing Website.  This will create additional confusion and further irreparably harm Plaintiffs' goodwill.

67.    While at Mining Disrupt, upon information and belief, Davian hosted an event, titled an "Evening with Gray Matter," at the Miami Beach Edition.  (Exhibit 12, Screenshot of "Event Invitation.")

18



68.    Defendants' timing—commandeering Plaintiffs' domain and publishing the

Infringing Domain and Infringing Website right before an important industry event—appears

calculated to cause maximum harm and disruption to Plaintiffs.

69.    Plaintiffs cannot effectively conduct business without their graymattergr.com domain

and associated email accounts.  Upon information and belief, this has caused Plaintiffs to lose

profits, caused reputational harm to Plaintiffs, and interferes with Plaintiffs' relationships with their

customers, vendors, and suppliers, as well as their potential customers, vendors, and suppliers.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. §1125)

70.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding

paragraphs as though fully set forth herein.

71.     As their first ground for relief, Plaintiffs allege federal trademark infringement under

§43 of the Lanham Act, 15 U.S.C. §1125.

72.     Plaintiffs have sold services under the GRAY MATTER mark since 2018.  They

have used the GRAY MATTER mark continuously in United States commerce since that time.

73.     Plaintiffs have used the GRAY MATTER mark continuously in United States

commerce long prior to Defendants' earliest use in interstate commerce of the Infringing Mark.

74.     The GRAY MATTER mark is inherently distinctive within the meaning of 15 U. S.

C. §1125(c) and was distinctive long before the Defendant's first use of the Infringing Mark.

75.     Plaintiffs have invested substantial time, effort and financial resources promoting the

GRAY MATTER mark in connection with the marketing and sale of their services in interstate

commerce.  As a result, the GRAY MATTER mark, through widespread and favorable acceptance

and recognition, has become an asset of substantial value as a symbol of Plaintiffs, their knowledge

in the industry, quality services and their goodwill.

76.     Notwithstanding Plaintiffs' established rights in the GRAY MATTER mark, on

information and belief, Defendants adopted and are using the Infringing Mark GRAY MATTER as

a domain name and on its linked website located at http://gograymatter.com in interstate commerce

in connection with cryptocurrency mining, and without Plaintiffs' consent, have used and continue

to use the Infringing Mark in the sale, offering for sale, distribution and advertising of

cryptocurrency mining services.

77.     Upon information and belief, Defendants are the owners and operators of, and are principally responsible for the content of the Infringing Domain, and the Infringing Website, including their use of the Infringing Mark

78.     Defendants have engaged in these infringing activities despite having actual knowledge of Plaintiffs' use and ownership of the GRAY MATTER mark.

79.     Defendants' actions are likely to lead the public to conclude, incorrectly, that Defendants' services originate with or are authorized by Plaintiffs, which false belief has damaged and will continue to damage Plaintiffs.

80.     Upon information and belief, Defendants advertised and offered services for sale using the Infringing Mark and has rendered their services, with the specific intention of misleading, deceiving or confusing consumers as to the origin of their services, of trading on Plaintiffs' reputation and goodwill, and of disrupting and interfering with Plaintiffs' relationships with its customers and the industry participants.

81.     Defendants' unauthorized use of the infringing marks in interstate commerce as described above, constitutes trademark infringement under 15 U.S.C. § 1125.

82.     As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits and goodwill.

83.     Defendants' acts of infringement will cause further irreparable injury to Plaintiffs if Defendants are not restrained by this Court from further violation of Plaintiffs' rights.

84.     Plaintiffs have no adequate remedy at law.

**COUNT II**
**CYBERSQUATTING UNDER THE ANTI-CYBERSQUATTING CONSUMER**
**PROTECTION ACT (15 U.S.C. §1125(d))**

85.     Plaintiffs re-allege and incorporate by reference each of the allegations of the preceding paragraphs as though fully set forth herein.

86.     Plaintiffs' GRAY MATTER mark is inherently distinctive and achieved distinctiveness prior to Defendants registering the Infringing Domain and prior to Defendants undertaking their infringing acts.

87.     The Infringing Domain is confusingly similar to Plaintiffs' GRAY MATTER mark and their use thereof in their own domain name, graymattergr.com.

88.     Upon information and belief, Defendants registered and used the Infringing Domain and their control over Plaintiffs' graymattergr.com domain to divert consumers from Plaintiffs' websites to the Infringing Website—as well as actually diverting web traffic from Plaintiffs' websites to the Infringing Website—for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the Infringing Website with Plaintiffs and Plaintiffs' websites.

89.     Upon information and belief, Defendants' registration and use of the Infringing Domain and graymattergr.com domain is intended primarily to capitalize on the goodwill associated with Plaintiffs' GRAY MATTER mark and to maliciously interfere with Plaintiffs' business operations.

90.     Upon information and belief, Defendants registered, trafficked in or used the Infringing Domain and graymattergr.com domain with bad faith intent to profit from and interfere with Plaintiffs' GRAY MATTER mark and the associated goodwill of the GRAY MATTER mark.

91.     Defendants' diversion of traffic from Plaintiffs' website has harmed and continues to harm Plaintiffs' ability to generate new business and revenue opportunities at Plaintiffs' websites and conduct day-to-day business.

92.     Upon information and belief, Defendants' registration and use of the Infringing Domain and graymattergr.com domain causes Plaintiffs' consumers and potential consumers, as well as other industry participants, to falsely believe that the Infringing Website and services sold under and in connection with said website are affiliated with and/or endorsed or approved by Plaintiffs.

93.     Defendants' registration and use of the Infringing Domain and graymattergr.com domain has caused and will continue to cause damage to Plaintiffs, in an amount to be proven at trial, and is causing irreparable harm to Plaintiffs, for which there is no adequate remedy at law.

## COUNT III
## OHIO COMMON LAW TRADEMARK INFRINGEMENT

94.     Plaintiffs re-allege each of the allegations of the preceding paragraphs as though fully set forth herein.

95.     As their third ground for relief, Plaintiffs allege that Defendants' actions described herein constitute common law trademark infringement.

96.     Plaintiffs have sold services under the GRAY MATTER mark since 2018.  They have used the GRAY MATTER mark continuously in Ohio commerce since that time.

97.     Plaintiffs have used the GRAY MATTER mark continuously in Ohio commerce long prior to Defendants' earliest use in interstate commerce of the Infringing Mark.

98.     The GRAY MATTER mark is inherently distinctive and was distinctive long before the Defendants' first use of the Infringing Mark.

99.     Plaintiffs have invested substantial time, effort and financial resources promoting the GRAY MATTER mark in connection with the marketing and sale of their services in Ohio commerce.  As a result, the GRAY MATTER mark, through widespread and favorable acceptance and recognition, has become an asset of substantial value as a symbol of Plaintiffs, their quality services and their goodwill.

100.     Notwithstanding Plaintiffs' established rights in the GRAY MATTER mark, on information and belief, Defendants adopted and are using the Infringing Mark GRAY MATTER as a domain name and on its linked website located at http://gograymatter.com in interstate commerce in connection with cryptocurrency mining, and without Plaintiffs' consent, have used and continue to use the Infringing Mark in the sale, offering for sale, distribution and advertising of cryptocurrency mining trading services.

101.     Upon information and belief, Defendants are the owners and operators of, and are principally responsible for the content of the Infringing Domain, and the Infringing Website, including their use of the Infringing Mark

102.     Defendants have engaged in these infringing activities despite having actual knowledge of Plaintiffs' use and ownership of the GRAY MATTER mark.

103.     Defendants' actions are likely to lead the public to conclude, incorrectly, that Defendants' services originate with or are authorized by Plaintiffs, which false belief has damaged and will continue to damage Plaintiffs.

104.     Upon information and belief, Defendants advertised and offered services for sale using the Infringing Mark and has rendered their services, with the specific intention of misleading, deceiving or confusing consumers as to the origin of their services, of trading on Plaintiffs'

reputation and goodwill, and of disrupting and interfering with Plaintiffs' relationships with its customers and the industry participants.

105. Defendants' unauthorized use of the Infringing Mark in interstate commerce as described above, constitutes trademark infringement under Ohio common law.

106. As a direct and proximate result of Defendants' trademark infringement, Plaintiffs have suffered and will continue to suffer loss of income, profits and goodwill and Defendants have and will continue to unfairly acquire income, profits and goodwill.

107. Defendants' acts of infringement will cause further irreparable injury to Plaintiffs if Defendants are not restrained by this Court from further violation of Plaintiffs' rights.

108. Plaintiffs have no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiffs respectfully request that this Court enter an Order granting the following relief:

a) Entering a judgment that Plaintiffs' GRAY MATTER mark is and continues to be infringed by Defendants and that Defendants' registration and use of gograymatter.com and graymattergr.com constitute cybersquatting in violation of 15 U.S.C. §1125;

b) Entering a judgment that Defendants' use of the Infringing Mark, Infringing Domain, and Infringing Website violates state common law trademark infringement laws;

c) Preliminarily and permanently enjoining and restraining Defendants and each of their agents, employees, officers, attorneys, successors, assigns, affiliates and any persons in privity or active concert or participation with any of them from using any trademark or domain name formed in whole or part of the term GRAY MATTER and any substantially similar marks, trade names, or domain names to market, advertise,

promote, distribute or otherwise identify Defendants' services where that designation would create a likelihood of confusion, mistake or deception with Plaintiffs' GRAY MATTER mark;

d) Pursuant to 15 U.S.C. §1116(a), directing Defendants to file with the Court and serve on Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

e) Requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to remove, disable and/or destroy, as appropriate, all literature, websites, social network pages, advertising, labels and other material in their possession bearing any trademark or domain name formed in whole or part of the term GRAY MATTER and any substantially similar marks, trade names, or domain names, after forensically preserving a copy of each as well as all evidence (including all metadata) relating to the creation, adoption, and use of the same;

f) Ordering Defendants to transfer the Infringing Domain and graymattergr.com to Plaintiffs;

g) Ordering Defendants to refrain from registering, using, or trafficking in any domain names that are identical or confusingly similar to Plaintiffs' GRAY MATTER mark, including but not limited to domain names containing, in whole or in part, Plaintiffs' GRAY MATTER mark and domain names containing misspellings of Plaintiffs' GRAY MATTER mark;

h) Ordering Defendants to account to Plaintiffs for, and disgorge to Plaintiffs, all profits they have derived as a result of the unlawful acts complained of above;

i)   Awarding Plaintiffs actual damages, trebled under 15 U.S.C. §1117, in an amount to be proved at trial or in the alternative statutory damages of $100,000 per domain name, as elected by Plaintiffs;

j)   Awarding to Plaintiffs all profits received by Defendants from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled, after an accounting pursuant to 15 U.S.C. §1117;

k)   Awarding Plaintiffs their attorneys' fees and costs pursuant to 15 U.S.C. §1117, because of the exceptional nature of this case resulting from Defendants' deliberate infringing actions; and

l)   Granting Plaintiffs such other and further relief as the Court may deem just.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: July 27, 2023                                Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/ Lisa M. Ghannoum*
Lisa M. Ghannoum (80950)
Christina J. Moser (74817)
Joseph H. Walsh (95822)
Melissa M. Bilancini (98510)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone: (216) 621-0200
lghannoum@bakerlaw.com
cmoser@bakerlaw.com
jhwalsh@bakerlaw.com
mbilancini@bakerlaw.com

*Attorneys for Plaintiffs*