**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GRAY DATA, INC., *et al.*, ) | CASE NO. 1:23-cv-1470 |
| ) | |
| ) | JUDGE CHARLES E. FLEMING |
| Plaintiffs, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND ORDER** |
| ) | |
| ANTHONY DAVIAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

On July 27, 2023, Plaintiffs filed an action for trademark infringement and cybersquatting against Defendants. (ECF No. 1). On July 28, 2023, Plaintiffs filed a motion for a temporary restraining order ("TRO") to prevent further irreparable harm by Defendants. (ECF No. 6, PageID 104). On July 28, 2023, the Court conducted a telephonic hearing regarding the motion for TRO where Plaintiffs' counsel and counsel for Defendant Anthony Davian were present. Defendant Matthew Kluger was not present, and no counsel has entered an appearance on his behalf. At the hearing, counsel for Defendant Davian raised concerns regarding the TRO request and whether Plaintiffs have standing to file this case. Subsequently, the Court allowed Plaintiffs and Defendant Davian the opportunity to brief the issue of standing.

Defendant Davian alleges that Plaintiffs commenced this lawsuit without proper authorization because David Handel, President of Gray Matter Holdings, Inc., lacks the authority to commence litigation on behalf of the company. (ECF No. 12, PageID 179–80). Defendant Davian additionally alleges that multiple abstention doctrines indicate that this Court should not participate in this dispute while the state court proceedings are ongoing. (ECF No. 12, PageID 190–91).

1

Plaintiffs assert that Handel possesses the power to initiate this case and that the abstention doctrines raised do not apply here. (ECF No. 15).

## I. Legal Standard

Federal Rule of Civil Procedure 65 governs the issuance of a TRO when "immediate and irreparable injury, loss, or damage will result to the movant." F.R.C.P. 65(b)(1)(A). Plaintiffs bear the burden of establishing entitlement to temporary injunctive relief. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). "[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). A TRO "should only be granted if the movant can clearly show the need for one." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). The Court considers the same four preliminary injunction factors when determining whether to issue a TRO: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

## II. Analysis

In Plaintiffs' motion, they request that the Court grant their motion for TRO and order Defendants "and all persons controlled by, affiliated with, and/or in active concert or participation with Defendants" to:

> (1) turn over complete control, including any requisite multifactor authentication necessary to change access, of all websites and domain names registered or controlled for, by, or on behalf of Defendants or any person affiliated with Defendants that include the term GRAY MATTER to Plaintiffs, including but not limited to the domains gograymatter.com and graymattergr.com; (2) cease and desist all use of the GRAY MATTER mark and any substantially similar marks or

>domain names; and (3) notify in writing all persons with whom Defendants have presented themselves as affiliated with GRAY MATTER that they are not affiliated with Plaintiffs.

(ECF No. 6, PageID 105). Plaintiffs want the Court to order Defendants to file a report, within seven days, setting forth the manner and form in which Defendants have complied with the injunction. *Id*.

Additionally, Plaintiffs request that the Court order:

>Defendants' agents Ionos, Inc., GoDaddy, Inc. and Domains By Proxy, LLC and their agents and affiliates, to (1) immediately following their receipt of this Order, transfer complete control and possession of graymattergr.com and gograymatter.com and the websites hosted at those domains forthwith to Plaintiffs and/or their designated agents, including any authentication/recovery information, and remove Defendants' ability to access and/or make changes to said domains and websites and (2) within 48 hours of their receipt of the Order, disclose to Plaintiffs via email the full identity of the account holder/registrant(s) of graymattergr.com and gograymatter.com and the websites hosted at those domains, including their name, address, telephone number, email, and any and all other information regarding said person's identity, and provide via email to Plaintiffs a copy of every document, application and communication related to said person.

(ECF No. 6, PageID 105–06).

One of the central matters in dispute in this case concerns who owns the controlling shares of Gray Matter Holdings, Inc., because it is relevant to determining if Plaintiffs have the authority to file this case and determining ownership of the alleged "GRAY MATTER mark." (ECF No. 1, PageID 4–8). Davian contends that he is the custodian of shares owned by his three minor children. (ECF No. 12, PageID 173). He alleges that each of his children owns 17% of the Gray Matter Holdings shares, giving him control over 51% of the shares. *Id*. He admits that David Handel owns 49% of the shares. *Id*. Plaintiffs did not address Davian's potential ownership of shares in their reply, but focused on arguing that David Handel, as president and CEO, has the power to initiate this litigation. (ECF No. 15, PageID 295). Plaintiffs cite to both a version of the corporation's bylaws provided by Defendant Davian and a version of the corporation's bylaws

3

provided by them as evidence that commencement of litigation falls within the authority of the president. *Id*. However, neither the Plaintiffs nor Defendant Davian provide any evidence that either of these versions of the bylaws are currently applicable. Even if they are, neither of the bylaws expressly vests the president with the authority to commence litigation. Plaintiffs' version of the bylaws states:

> The President shall be the chief executive officer of the Corporation, shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect. The President shall also preside at all meetings of the shareholders and the Board of Directors.
>
> The President shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the Corporation, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the Board of Directors to some other officer or agent of the Corporation.

(ECF No. 15, PageID 367).

Defendant Davian's version of the bylaws states, "[t]he President will preside at all meetings of shareholders and directors, have general supervision of the Corporation's affairs, and perform all other duties as are incident to the office or are properly required of him or her by the Board of Directors." (ECF No. 12, PageID 207). Plaintiffs argue that because Handel has "general supervision of the Corporation's affairs" and "general and active management of the business" that commencing this lawsuit falls under those duties. (ECF No. 15, PageID 295–96). Additionally, Plaintiffs contend that because the bylaws do not expressly reserve authority to file suit to the board of directors, Handel is presumed to have authority to commence litigation. *Id*.

Defendant Davian cited to a case from Wyoming, the state where Gray Matter Holdings, Inc. is incorporated, that addressed how the Wyoming Business Corporation Act assists in determining the extent of the president's authority. *Woods v. Wells Fargo Bank Wyoming*, 90 P.3d

4

724, 732–33 (Wyo. 2004). The relevant provision dictates, "[a]ll corporate powers shall be exercised by or under the authority of the board of directors of the corporation … subject to any limitation set forth in the articles of incorporation." Wyo. Stat. § 17-18-801(b). In *Woods*, the Supreme Court of Wyoming determined whether satisfaction of a judgment was part of the "general business and affairs" of the corporation. 90 P.3d at 733. The court looked to case law regarding whether initiation of litigation is in the ordinary course of business as a parallel to make their determination concerning satisfaction of a judgment. *Id*. In doing so, the court acknowledged, "[i]t has long been the general rule that the authority of a board of directors to manage a corporation's affairs extends to control of the corporation's litigation," and "absent express delegation of the corporate directors' authority to control the decision whether to conduct litigation on the corporation's behalf … no one else may legitimately exercise that authority." *Id*. (*citing Chun v. Board of Trustees*, 952 P.2d 1215, 1226 (Haw. 1998)).

Consequently, current Wyoming case law states the exact opposite of what Plaintiffs' construe it to be. Without express delegation from the Board of Directors to the President granting him the authority to commence litigation, it is presumed that authority lies with the Board of Directors of the corporation. Neither Plaintiffs nor Defendant Davian have identified the make-up of the Board of Directors for Gray Matter Holdings. Plaintiffs also did not file anything indicating that the Board of Directors granted Handel the authority to commence this litigation. Determining the current, applicable bylaws and determining the actual structure of the corporations involved here is critical to determining whether Plaintiffs had sufficient authority to commence this litigation.

Defendant Davian and Plaintiffs provided a copy of a proposed amended verified complaint that Plaintiffs filed in their state case that reveals Plaintiffs' position concerning the

5

ownership of Gray Matter Holdings, Inc. (ECF No. 13). The proposed amended complaint details that Handel owns one hundred percent of the issued shares of Gray Matter Holdings, Inc. (ECF No. 15, PageID 324–26). Plaintiffs contend that Handel can produce a stock certificate that indicates he holds forty-nine shares and Davian has never produced evidence that a stock certificate was ever issued to him or his children. *Id*. Without further discovery and briefing in this case, the Court cannot determine ownership of Gray Matter Holdings, Inc., determine what bylaws apply, and determine if Plaintiffs had the proper authority to file this case.

Consequently, the Court takes these issues under advisement and reserves ruling on standing until the parties clarify the issue further. Thus, the Court will consider the merits of Plaintiffs' request for a TRO at this time. For the reasons set forth below, the Court **DENIES** Plaintiffs' motion for a TRO.

    a. *Likelihood of Success*

Plaintiffs' verified complaint raises three claims: 1) federal trademark infringement under 15 U.S.C. § 1125, 2) cybersquatting under the Anti-Cybersquatting Consumer Protection Act in 15 U.S.C. § 1125(d), and 3) Ohio common law trademark infringement. (ECF No. 1, PageID 20–25). Plaintiffs and Defendant Davian agree that the Ohio common law claim is considered under the same framework as the Lanham Act claim. (ECF No. 6, PageID 118 and ECF No. 12, PageID 188). Both Plaintiffs (ECF No. 6, PageID 121–22) and Defendant (ECF No. 12, PageID 188) note that the cybersquatting claim relies on a similar analysis, so the Court will primarily consider the likelihood of success of Plaintiffs' federal trademark infringement claim.

To evaluate a claim for infringement of an unregistered mark, the Court determines 1) whether the mark is protectable, and 2) "whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th

Cir. 2005). Defendant Davian does not appear to contest that the alleged Gray Matter mark is protectable because he solely addresses likelihood of confusion, specifically analysis of the eight *Frisch's* factors, in his opposition concerning likelihood of success. (ECF No. 12, PageID 182–83). For the sake of brevity, the Court will also focus its analysis on likelihood of confusion.

When evaluating likelihood of confusion, the Court balances eight factors: "1. strength of the plaintiff's mark; 2. relatedness of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. defendant's intent in selecting the mark; [and] 8. likelihood of expansion of the product lines." 399 F.3d at 763 (*citing Frisch's Restaurants, Inc v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982)). Defendant Davian concedes that the marks are similar under factor three, so the Court will not analyze that factor. (ECF No. 12, PageID 183).

*1. Strength*

Plaintiffs argue that their mark is categorized as arbitrary, which is one of the strongest mark categories. (ECF No. 6, PageID 119). They noted that the mark has been in continuous use since 2018 in connection with cryptocurrency mining, so the mark is strong. *Id*. Defendant Davian contends that the mark is weak due to prior use by third parties and different use of the mark throughout Plaintiffs' history. (ECF No. 12, PageID 183). Plaintiffs reply that third-party use of similar marks does not erode the strength of an arbitrary mark. (ECF No. 15, PageID 302).

To evaluate the strength of a mark, the Court "focuses on the distinctiveness of a mark and its recognition among the public." *Maker's Mark Distillery, Inc v. Diageo North America, Inc.*, 679 F.3d 410, 419 (6th Cir. 2012) (*quoting Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002)). Finding that a mark is arbitrary is "only a first step in determining the strength of a mark in the marketplace." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931

7

F.2d 1100, 1107 (6th Cir. 1991). An arbitrary mark will not be considered a strong mark "if it does not achieve broad public recognition across product lines." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002). "[C]ourts have found extensive third-party uses of a trademark to substantially weaken the strength of a mark." *Homeowners*, 931 F.2d at 1108. Additionally, "[t]he absence of any advertising… diminishes the likelihood that most people will be familiar with a company's mark, absent evidence that its goods or services have achieved broad public recognition." *Therma-Scan*, 295 F.3d at 632.

Plaintiffs contend that Defendant Davian argues that the Gray Matter mark is generic. (ECF No. 15, PageID 302). However, the only use of the term generic occurs on the first page of Defendant's opposition where Defendant Davian contends, "even if the Corporate Entities could bring this lawsuit, the generic two-word phrase GRAY MATTER is not a protectable mark under the law." (ECF No. 12, PageID 172). Defendant Davian does not address or dispute Plaintiffs' belief that the mark is arbitrary in his analysis, so the Court will assume the mark is arbitrary for purposes of this analysis.

Plaintiffs rely solely on the allegation that their mark is arbitrary in arguing that their mark is strong. (ECF No. 6, PageID 119). However, they introduced no evidence to support the idea that their mark has achieved broad public recognition in the marketplace. To contest the commercial recognition of the alleged mark, Defendant notes that ten different entities with the term Gray Matter in their name are registered currently with the Ohio Secretary of State. (ECF No. 12, PageID 183). Additionally, Defendant provided seven domain names that were registered before the domain at issue in this case that utilize the term Gray (or Grey) Matter. (ECF No. 12, PageID 184–85). Defendant Davian contends that the Gray Matter mark has only been affiliated with cryptocurrency since August 2019 after previously providing different services under the

8

same mark. (ECF No. 12, PageID 185). Plaintiffs do not contest this allegation, so the Court will assume it is true for the purposes of this analysis. The lack of evidence concerning commercial recognition of the mark, the evidence of numerous other entities using a similar mark (some in the same market as Plaintiffs), and the fact that Plaintiffs used the mark for differing services over the course of the mark's history weigh in favor of finding that Plaintiffs failed to establish broad public recognition. Consequently, the Court finds that Plaintiffs have not established that they are likely to succeed in proving that the mark is strong.

*2. Relatedness, Marketing, Purchaser Care, and Expansion*

Plaintiffs contend that Defendants are focused on the same services as Plaintiffs, cryptocurrency mining, and that the marketing channels they use are similar. (ECF No. 6, PageID 119–20). They argue that customers will be confused irrespective of their level of care because of Defendants' affiliation with Plaintiffs. (ECF No. 6, PageID 120). Plaintiffs noted that expansion plans are irrelevant in this case because the parties already compete in the same field. (ECF No. 6, PageID 121). Defendant Davian combined his response to these four factors by arguing that Plaintiffs misunderstand what services they offer and what customers use their services. (ECF No. 12, PageID 185).

Defendant Davian alleges that Gray Matter Advisors, "offers advisory services to various consumers, including cryptocurrency miners." (ECF No. 12, PageID 186). He states there is no evidence that Gray Matter Advisors intends to mine cryptocurrency, Gray Data's fundamental service. *Id*. Davian contends that Gray Data does not need to market to consumers because the growth of that company is determined by how much computing power it can generate and how efficiently it facilitates blockchain transactions. *Id*. Whereas Gray Matter Advisors must market to companies like Gray Data to engage their advisory services. *Id*.

9

Plaintiffs respond that selling cryptocurrency is only one part of their business. (ECF No. 15, PageID 305). They argue that Defendant Davian's claim that their marketing channels are different is disputed by his attendance at the Mining Disrupt conference. (ECF No. 15, PageID 306).

In Plaintiffs' verified complaint, Plaintiffs defined the services provided by Gray Matter Holdings and its subsidiary, Gray Data. (ECF No. 1, PageID 3–4). Plaintiffs wrote,

> Gray Matter Holdings and its subsidiary Gray Data (the "Corporation") engage in the business of cryptocurrency data mining. The Corporation uses high performance compute ("HPC") hardware to facilitate blockchain auditing/verification and digital asset generation. The digital assets are generated via a process that verifies transactions on a block chain, colloquialized as "cryptocurrency mining." The Corporation's services require capital inputs for computer hardware and operational electricity. For these inputs, and the verification service provided, the Corporation receives a portion of the generated digital assets, colloquialized as a "reward." These rewards are booked as the Corporation's inventory and then traded or sold for goods and services.

*Id*. Additionally, Plaintiffs identified their service and industry in their motion as "cryptocurrency mining." (ECF No. 6, PageID 119). After Defendant Davian clarified that Gray Matter Advisors does not mine cryptocurrency, Plaintiffs then allege that they "also educate others by providing 'white glove' consulting, planning, procurement and repair services to those engaged in, or looking to engage in, capacity management via high density interruptible loads." (ECF No. 15, PageID 388). This raises questions concerning the authenticity of those allegations because they were only raised once Defendant Davian defined what his Gray Matter Advisors business does. Consequently, the Court finds that Plaintiffs are not likely to succeed in establishing the relatedness of the services in question.

Neither Plaintiffs nor Defendant Davian provided much information concerning how they market their businesses. Other than Plaintiffs and Defendants each having websites and attending the Mining Disrupt conference, there is no evidence that the parties are targeting the same

customers or utilizing the same market channels. Without more information, this factor does not weigh for or against likelihood of confusion.

"[W]hen services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991). Plaintiffs contend that the degree of purchaser care is irrelevant to the analysis of likelihood of confusion in this case because Plaintiffs' customers are familiar with Defendant Davian and will likely believe that he continues to be affiliated with Plaintiffs. (ECF No. 6, PageID 120). However, Plaintiffs failed to mention some critical pieces of information in their analysis of the degree of care exercised by their customers.

Plaintiffs initially claimed that Defendants usurped their graymattergr.com domain and email accounts, preventing them from conducting business and interfering with their relationships with their customers, vendors, and suppliers. (ECF No. 1, PageID 19). What they failed to mention was that their cryptocurrency mining operation, Gray Data, is hosted on a different website, graydata.io. (ECF No. 12, PageID 187). Additionally, Plaintiffs created the domain name graymattergroup.io and moved their business and email server to that domain on July 20, 2023. (ECF No. 12, PageID 176). Plaintiffs admitted in their reply that they created new domains for their businesses in February 2023. (ECF No. 15, PageID 390). They also admitted that they transitioned to the new domain and recovered the backed-up contents of their former email server. *Id*. The lingering issue is that some of the emails they sent to vendors and customers to notify them of the domain change have gotten trapped in spam filters. *Id*. None of this information was provided in the verified complaint or the motion for TRO.

Consequently, degree of purchaser care would certainly be relevant to the likelihood of confusion analysis because Plaintiffs were presented with the opportunity to clarify any potential

11

questions concerning their entities and Defendant Davian's new entity, Gray Matter Advisors. There is no evidence that any customers involved here exercise a low degree of purchaser care.

Finally, the Court considers "the likelihood that either business will expand its product line to compete with the other." *Wynn Oil Co. v. American Way Service Corp.*, 943 F.2d 595, 604 (6th Cir. 1991). Plaintiffs contend that the parties already compete, so expansion plans are irrelevant. (ECF No. 6, PageID 121). As discussed above, there is not enough evidence to establish that the parties are competitors. Plaintiffs and Defendant Davian do not address any expansion plans. Thus, this factor does not support the likelihood of confusion.

### 3. Actual Confusion

Plaintiffs' motion for TRO does not address actual confusion. (ECF No. 6). Defendant Davian notes this in his opposition. (ECF No. 12, PageID 185 and 187). In their reply, Plaintiffs contend that their employees were informed of multiple incidents of actual confusion at the Mining Disrupt conference. (ECF No. 15, PageID 307). Plaintiffs allege that four industry participants expressed confusion to them regarding who represents Gray Matter. *Id*. However, the only evidence they introduced to support that allegation was a declaration by Marc Behar, the alleged COO of Plaintiffs' entities. (ECF No. 15, PageID 387–91). Plaintiffs' original verified complaint in their state case asserted that Defendant Davian intended to alter the employment status of Mr. Behar prior to the termination of Davian's employment. *David Handel, et al. v. Anthony Davian, et al.*, Case No. CV-23-974930 (Cuyahoga Ct. Com. Pl. filed Feb. 8, 2023). A self-serving declaration from Behar is not strong evidence of actual confusion. Additionally, the alleged confusion seems to revolve around the question of ownership of Gray Matter Holdings rather than the Gray Matter mark. Without more information, the Court cannot find there is evidence of actual confusion.

*4. Intent*

Plaintiffs argue that Defendants intended to create the impression that their website was sponsored or affiliated with Plaintiffs' entities. (ECF No. 6, PageID 121). Defendant Davian responded that the dispute over corporate control of Gray Matter Holdings shows that Davian did not intend to confuse third parties, but instead incorporated a separate entity to fall under the Gray Matter umbrella. (ECF No. 12, PageID 188). Plaintiffs did not address the element of intent in their reply brief. Due to the lack of briefing on this issue, the Court finds that this factor does not weigh in favor or against likelihood of confusion.

Weighing all eight factors, the Court finds that Plaintiffs are not likely to succeed in establishing the likelihood of confusion required for their federal trademark infringement claim. As Plaintiffs' Ohio trademark and cybersquatting claims rely on a similar analysis, the Court finds that Plaintiffs have not established a strong likelihood of success on the merits.

*b. Irreparable Injury*

The Lanham Act provides for "a rebuttable presumption of irreparable harm upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction." *Hydrojug, Inc. v. Five Below, Inc.*, 625 F.Supp.3d 684, 715 (N.D. Ohio 2022) (*citing* 15 U.S.C. § 1116(a)). However, because Plaintiffs did not establish likelihood of success on the merits, they are not entitled to that rebuttable presumption. Considering the information brought to light by Defendant Davian concerning Plaintiffs changing their domain, email server, recovering their old email server, and contacting their customers to indicate their change in domain, the Court finds that Plaintiffs have not established that they will suffer irreparable injury absent some form of injunction.

### III. Conclusion

Due to the lack of evidence that immediate and irreparable injury, loss, or damage will result to the movant, the Court **DENIES** Plaintiffs' motion for temporary restraining order and order to show cause. (ECF No. 6). The Court reserves ruling on the issues of standing and abstention until they can be developed further.

The Court **GRANTS** Plaintiffs' motion for leave to file their amended exhibit instanter. (ECF No. 16).

**IT IS SO ORDERED**.

Dated: August 21, 2023

                                               **HONORABLE CHARLES E. FLEMING**
                                               **UNITED STATES DISTRICT JUDGE**